```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF MISSISSIPPI
                   JACKSON DIVISION
```

DR. PAMELA M. FELDER                                    PLAINTIFF

VS.                              CIVIL ACTION NO. 3:13CV392TSL-JMR

DR. LONNIE EDWARDS, IN HIS INDIVIDUAL                  DEFENDANTS
CAPACITY, DR. JAYNE SARGENT, IN HER
INDIVIDUAL CAPACITY, AND THE JACKSON PUBLIC
SCHOOL DISTRICT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Dr. Jayne Sargent and Jackson Public School District (JPS) "to dismiss on [the] basis of qualified immunity from federal claims and individual immunity from state law claims or, alternatively, for summary judgment."[1] Plaintiff Dr. Pamela M. Felder both opposes the motion and requests a "continuance to conduct immunity related discovery before responding to the Defendants' Motion to Dismiss/Summary Judgment so that Plaintiff can show that

---

[1] The title of defendants' motion would seem to denote a request for a ruling that Sargent, who is sued only in her individual capacity, is entitled to qualified immunity/individual immunity, or alternatively, a request for a ruling that the moving defendants are entitled to summary judgment as to the claims asserted in the complaint. However, while it is not altogether clear from the briefs offered in support of the motion, having read the motion and the requests for relief asserted therein, the court concludes that the motion is most accurately viewed as seeking only a ruling that Sargent is entitled to qualified immunity/state law immunity pursuant to either a 12(b)(6) or summary judgment standard. Despite its title, the motion in substance does not purport to seek summary judgment as to any other defendant.

defendants violated her clearly established constitutional and statutory rights and the defendants' conduct was not objectively reasonable."[2]  The court, having reviewed the parties' memoranda and the exhibits attached thereto, concludes that the motion should be granted in part and stayed in part to allow plaintiff to conduct immunity-related discovery to the extent discussed herein.

    Plaintiff was formerly employed by JPS as Deputy Superintendent of Curriculum and Instruction/Accreditation. Following her nonrenewal in 2012, she filed this action against JPS and former JPS superintendents Dr. Lonnie Edwards[3] and Dr.

---

[2] Plaintiff, who apparently interpreted defendants' motion as seeking summary judgment on the merits, noted in her memorandum of authorities that her response was confined to the issue of qualified immunity and requested "permission to conduct merit discovery" "before the court determines whether defendants are entitled to summary judgment."  Although it is a moot point, the court would point out that had defendants been seeking summary judgment on the merits, plaintiff's request for a delay to allow merits discovery would have been insufficient.  See Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (explaining that party seeking continuance under Rule 56(d) (formerly 56(f)) "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts ... [but instead] must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion") ((internal citations and quotations omitted).

[3] While both the original and amended complaints explicitly state that Edwards is being sued in his individual capacity only, on September 20, 2013, counsel for JPS filed an answer purporting to answer the claims asserted against Edwards in his official capacity.  By footnote one of the motion, counsel disavows representation of defendant Edwards in his individual capacity.

Sargent, in their individual capacities only, asserting various federal claims and a state law claim for breach of contract. The facts as set forth in the complaint are as follows:

During Lonnie Edwards' tenure as JPS superintendent, which commenced in 2008, JPS hired Felder to serve as one of two deputy superintendents. Felder, who had previously served as a teacher and principal in the JPS system, was selected as Deputy Superintendent for Curriculum and Instruction/ Accreditation, because Edwards, to whom she directly reported, lacked experience in the areas of curriculum and instruction. In this position, Felder was responsible for exceptional education, assessment, accountability and research, state and federal programs, professional development, literacy, advanced academics, instructional and information technology and instruction.

Felder alleges that in addition to fulfilling the job duties outlined for her position, she performed many of the duties set out in Edwards' job description, with Edwards receiving both the credit and the compensation for her work. While she toiled at her desk completing her and Edwards' work, Edwards and Deputy Superintendent for Schools Wilbur Walters "lollygagged about Jackson, [Mississippi]." Felder further alleges that Walters was not required to complete any acts of substance, but rather his primary role was to chauffeur Edwards.

On March 29, 2011, plaintiff slipped and fell down some stairs while on the job.  Despite the disability caused by the injury, she was able to perform the essential functions of the job and was permitted by Edwards to work half days at the Central Office and half days from home.  During this time, Edwards, who had been notified by JPS that his contract would not be renewed, asked Felder to testify on his behalf at his due process hearing and to respond to specific items outlined in his non-renewal letter from the board.  While she complied with his request regarding the items outlined in the non-renewal letter, she advised him due to her disability, she would not voluntarily appear to testify at the hearing.  Although it is unclear whether she expressed the same to Edwards, plaintiff alleges she was reluctant to testify because she did not want to associate herself with Edwards and/or voluntarily interject herself into the controversy between Edwards and the school board.  She asserts that immediately following her refusal, Edwards began to retaliate against her by requiring her to submit her time sheets directly to him, instead of following the usual procedure whereby she gave her time sheets to her secretary who then submitted them to the payroll officer/ department.

Following Edwards' tenure with JPS which ended June 30, 2011, Dr. Sargent, who had previously served as JPS Superintendent from 1997 to 2002, was appointed as Interim Superintendent.  According

4

to the complaint, during Sargent's previous term as superintendent, she had allowed Felder to work from home to accommodate a previous disability. However, upon commencing service as Interim Superintendent, Sargent refused to continue this reasonable accommodation for plaintiff's current disability. Specifically, on July 18, 2011, Sargent notified Felder by letter that she was not aware of any JPS policy which allowed an employee to complete job duties from home and further advised plaintiff that she was required to comply with the district's sick leave policy which required her to use sick leave for time she was away from work due to illness.

Felder further charges that Dr. Sargent excluded her from executive team/instructional meetings and removed her from a supervisory position over the directors of Information Technology, State and Federal Programs and Exceptional Education, transferring their supervision to Deputy Superintendent Walters with instructions that plaintiff no longer interact with the directors.

On February 23, 2012, months after her alleged demotion and while she was on leave to attend to her disability, Sargent sent her a nonrenewal letter which stated, "[T]he reasons for your non-renewal as Deputy Superintendent are as follows:  The financial constraints of the school district necessitate the elimination of your positions [sic].  The school district is facing a severe budgetary challenge for this fiscal year and future fiscal years."

5

Sargent further advised, "[T]he school district will no longer employ two deputy superintendents.  Consequently, the school administration will be restructured to provide concentrated focus on curriculum and the delivery of instruction such that two deputies will not be required."  While plaintiff was non-renewed, Wilbur Walters retained his position as a deputy superintendent.

Felder alleges that in implementing what was purportedly a reduction in force, Sargent failed to follow applicable JPS policies.  She also contends, though, that there was no real reduction in force and that JPS did not actually eliminate the position of "Deputy Superintendent of Instructional Support and School Accreditation."  She contends that instead, by its purported reduction in force, JPS eliminated only three administrative positions (not including the position she had held), and that it merely renamed the remaining administrative positions, and offered the renamed positions with a reduction in pay to the same administrators who had held those positions before they were renamed, with the exception of her.  She claims that she was disabled at the time, and was the only administrator in the renamed positions who was not offered an alternate position.  According to the complaint, the supposed reduction in force is belied by the fact that days before Sargent left as Interim Superintendent, she allowed Walters to recommend that Sargent's own son be promoted to Executive Director for Research and Accountability, when Sargent

6

had previously denied plaintiff permission to hire an employee to fill the position.

Felder further alleges that while the foregoing events were transpiring, JPS was also interfering with her rights under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* According to her complaint, JPS required her to apply for FMLA leave commencing on April 13, 2011.  JPS thereafter interfered with her FMLA rights by miscalculating her FMLA leave time; failing to give her notice that she was required to take FMLA leave concurrently with her receipt of workers' compensation benefits; rescinding approval of her FMLA leave on October 11, 2011; and refusing to continue to honor the reasonable accommodation of allowing her to work from home.

Lastly, the complaint charges upon her separation from the District, JPS failed to pay her for 142 days of sick leave which had been donated by employees in school districts across the state.

On this factual basis, Felder purports to assert claims against all the named defendants for gender discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment.  She additionally asserts claims against them under 42 U.S.C. § 1983 for violation of her alleged constitutional rights to be left alone (First Amendment); to not be deprived of her property without due process (Fifth Amendment takings clause); to

7

privacy (Fourteenth Amendment); and to procedural due process (Fourteenth Amendment). And she alleges claims under the Americans with Disability Act (ADA), 42 U.S.S. § 12101 *et seq.*, and the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* Finally, plaintiff purports to advance a state law claim for breach of contract. The court first addresses Felder's putative federal claims.

"Section 1983 provides a cause of action for persons who have been 'depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws' of the United States by the actions of a person or entity operating under color of state law." Kovacic v. Villarreal, 628 F.3d 209, 213 (5th Cir. 2010) (alteration in original) (quoting § 1983). Defendants maintain that Sargent, who has been sued only in her individual capacity, is entitled to qualified immunity as to the federal claims set out in the complaint. While plaintiff has responded in opposition to the substance of the motion, she has also requested that the court defer consideration of the motion to allow for immunity-related discovery.

Qualified immunity promotes the necessary, effective, and efficient performance of governmental duties, Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982), by shielding from suit all but the "plainly incompetent or those who knowingly violate the law," Brumfield v. Hollins, 551

F.3d 322, 326 (5th Cir. 2008) (citation and internal quotation marks omitted).  Once a defendant properly invokes qualified immunity, the plaintiff bears the burden to rebut its applicability.  <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323 (5th Cir. 2002).  The qualified immunity analysis asks whether (1) the claims as pled in the complaint "establish a violation of clearly established right," and (2) "whether the conduct was objectively reasonable in light of clearly established law at the time of the incident."  <u>Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.</u>, 512 F.3d 157, 166 (5th Cir. 2007).  Conclusory allegations of wrongdoing do not satisfy these requirements.  <u>Carter v. Reach</u>, 399 Fed. Appx. 941, 942 (5th Cir. Oct. 29, 2010).

   As qualified immunity is immunity from suit, not simply a defense to liability, <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985), a defendant may lose one of the most salient benefits of immunity, protection from pretrial discovery, if the district court permits overly broad discovery in connection with resolving a defendant's motion asserting qualified immunity.  <u>Backe v. LeBlanc</u>, 691 F.3d 645, 648 (5th Cir. 2012).  To mitigate this risk, the Fifth Circuit has "established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to

ascertain the availability of that defense." Id.  Under the prescribed procedure, the

> court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." [Wicks v. Miss. State Emp't Servs., 41 F.3d 991, 994-95 (5th Cir. 1995)]; see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009) (directing that a plaintiff must "state a claim for relief that is plausible on its face"—excluding statements that are "no more than conclusions" which are "not entitled to the assumption of truth").  Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.  After the district court finds a plaintiff has so pled, if the court remains "unable to rule on the immunity defense without further clarification of the facts," it may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim." Lion Boulos [v. Wilson, 834 F.2d 504, 507-08 (5th Cir. 1987)].

Id.

Defendants maintain generally in their motion that Felder cannot overcome Sargent's qualified immunity inasmuch as the complaint relies on conclusory factual and legal allegations which, as a "whole[,] fail[] to specifically set out what conduct by Defendant Sargent violated [her] rights."  However, as to some of plaintiff's putative federal claims - namely for violation of the Equal Protection Clause, the Fourteenth Amendment right to privacy, Title VII, § 1981 and the FMLA - defendants additionally offer more specific arguments in support of dismissal.  Plaintiff's argument in response to defendants' motion addresses

10

only her claims for gender discrimination under Title VII and the Equal Protection Clause and her FMLA claim. She has not addressed defendants' arguments as to the remaining claims. More to the point, she has not attempted to refute Sargent's assertion of qualified immunity as it pertains to the alleged violations of plaintiff's rights under the ADA, the First and Fifth Amendments and the alleged due process violation. Likewise, Felder has not purported to present any facts that would overcome Sargent's qualified immunity as it relates to Felder's ostensible claim for invasion of privacy.

Regarding the ADA claim, it is clear that Sargent is not an "employer" under the ADA definition of that term. See 42 U.S.C. § 12111(4) (defining "employer"). And while the Fifth Circuit has not specifically ruled on the question, the majority of federal circuit courts that have considered the issue have held that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition of that term. See Walsh v. Nevada Dept. of Human Resources, 471 F.3d 1033 (9th Cir. 2006); Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002); Butler v. City of Prairie Village, Kan., 172 F.3d 736 (10th Cir. 1999); Sullivan v. River Valley School Dist., 197 F.3d 804,(6th Cir. 1999); Mason v. Stallings, 82 F.3d 1007 (11th Cir. 1996); U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd., 55 F.3d 1276 (7th Cir. 1995). The reasoning

11

of these courts is persuasive and the court thus concludes that Felder's ADA claim against Sargent should be dismissed, on both the basis of Sargent's qualified immunity and on the basis that she is not a proper ADA defendant in any event.

Moreover, the complaint lacks any detail, much less the level of specificity required to overcome qualified immunity, as to how Sargent allegedly either retaliated against plaintiff for exercising her First Amendment right to be left alone and or participated in any decision to deny Felder compensation for donated sick leave (which is the alleged basis of the putative Fifth Amendment taking claim).  Further, while plaintiff claims her due process rights were violated by defendants' failure to provide her with notice of her right to a hearing prior to her alleged demotion, Mississippi law is unsettled on the issue of whether a demoted (as opposed to a terminated) school employee is entitled to notice and a hearing.  See <u>Winters v. Calhoun County School Dist.</u>, 990 So. 2d 238, 240-41 (Miss. Ct. App. 2008) (declining to address the issue of whether Education Employment Procedures Law applies to demotions as well as to non-renewals). The complaint thus fails to allege a violation of a clearly established right so as to overcome Sargent's qualified immunity. Finally, the allegations of the complaint do not state a claim for violation of plaintiff's right to privacy.  In this regard, plaintiff's claim for invasion of privacy appears to be based on a

12

charge that Sargent inquired about plaintiff's medical condition in Dr. Walters' presence. "There is no Fifth Circuit authority on what types of disclosures are personal enough to trigger the protection of the confidentiality branch [of the substantive due process privacy rights]." Zaffuto v. City of Hammond, 308 F.3d 485 (5th Cir. 2002) (observing that "as the Third Circuit notes, 'the contours of the confidentiality branch are murky'") (quoting Scheetz v. The Morning Call, Inc., 946 F.2d 202, 206 (3d Cir. 1991)). There is no allegation that Sargent actually disclosed or revealed to Dr. Walters any intimate facts about plaintiff, much less facts which were arguably sufficiently intimate to violate her constitutional rights. Accordingly, she has failed to plead sufficient facts to state a cognizable claim for violation of her right to privacy, much less sufficient facts to overcome Sargent's qualified immunity.

Turning to her claim of gender discrimination, defendants maintain that Felder has failed to set forth a *prima facie* case for gender discrimination as she has not alleged or provided evidence that a similarly situated male employee was treated more favorably. Defendants further maintain that even had she established a *prima facie* case, plaintiff has not come forward with any proof to counter JPS's legitimate non-discriminatory reason for her termination, a reduction in force. Defendants

13

additionally argue that the putative § 1981 claim fails inasmuch as gender discrimination is not cognizable under § 1981.

In response to the motion, Felder asserts that she has met her burden on her *prima facie* case by her allegations that (1) she was non-renewed while her less diligent male counterpart, Wilbur Walters, kept his position as Deputy Superintendent, and (2) defendants selected a male, Jason Sargent, to fill the position of Executive Director of Research, when she was clearly better qualified and should have been offered the position under JPS's reduction in force policy.[4]  As to JPS's proffered legitimate non-discriminatory reason, the reduction in force, the complaint alleges that the reduction in force was a sham and amounted to little more than a reshuffling and renaming of positions within the administration.

Plaintiff's putative § 1981 and Title VII claims for gender discrimination fail as a matter of law.  As defendants have correctly pointed out, a claim for sex/gender discrimination is not cognizable under § 1981.  Bobo v. ITT Continental Baking Co., 662 F.2d 340, 345 (5th Cir. 1981) (concluding that district court properly held that sex discrimination is not cognizable under §

---

[4] Based on her allegation that defendant Edwards allowed Wilbur Walters to slack off his job duties while requiring her to complete her assigned tasks, plaintiff further contends that she has a claim that males were treated more favorably in the terms and conditions of employment.  As the motion at bar pertains to defendant Sargent, the court will not address this putative claim.

1981).  Further, as an agent of JPS, Sargent does not meet the statutory definition of "employer" under Title VII.  See 42 U.S.C. § 2000e(b) ("employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees ..., and any agent of such a person ...").  As such, she is not subject to individual liability.  See  Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999) (stating that although Title VII defines "employer" to include any agent of employer, statute not interpreted to impose individual liability on the agent); Chehl v. Southern Univ. and Agric. and Mech. Coll., 34 Fed. Appx. 963 (5th Cir. 2002) ("Title VII does not impose personal liability on individuals."); Grant v. Lone Star Co., 21 F.3d 649 (5th Cir. 1994) (holding that "[o]nly 'employers,' not individuals acting in their individual capacity who do not otherwise meet the definition of 'employers,' can be held liable under Title VII").

    However, gender discrimination claims against individuals are cognizable under the Equal Protection clause with the substantive elements being virtually identical to a claim under Title VII. Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 550 (5th Cir. 1997); Cervantez v. Bexar County Civil Serv. Comm'n, 99 F.3d 730, 734 (5th Cir.1996) ("[W]e have on numerous occasions recognized that § 1983 and Title VII are parallel causes of action").  Thus, to establish a *prima facie* case of gender discrimination by Sargent, Felder must establish the following:

15

(1) she was qualified for the position; (2) she suffered an adverse employment decision; and (3) she was replaced by a male or that males "were treated differently under circumstances nearly identical to [hers]." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995). As in the case where a Title VII gender claim is asserted, if established, a *prima facie* case raises an inference of discrimination, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse decision. Patel v. Midland Memorial Hosp. and Medical Ctr., 298 F.3d 333, 342 (5th Cir. 2002) (citations omitted). Should the defendants present such a reason, then the inference disappears, and the plaintiff must come forward with evidence that the proffered reason is a pretext for gender discrimination. Id.

Here, the court agrees that plaintiff has established a *prima facie* case of gender discrimination against Sargent with regard to her termination. The only alleged instance of gender discrimination in which Sargent is alleged to have participated is the decision to retain Wilbur Walters in his position as deputy superintendent while non-renewing plaintiff.[5] And in the court's

---

[5] While plaintiff also maintains that she has a claim for gender discrimination based on the fact that she was not offered the position of Director of Research, which was instead given to the less qualified Jason Sargent, defendant Sargent is not alleged to have been the decisionmaker in that instance. Rather, the complaint alleges that Walters hired Jason Sargent for the position.

16

opinion, the complaint adequately alleges that Sargent treated Wilbur Walters, a male, differently from plaintiff in nearly identical circumstances.  In response to defendants' articulated legitimate non-discriminatory reason for her termination, the court concludes that the complaint sets forth facts which, if proven, would create a question of fact as to whether plaintiff was actually terminated by Sargent on account of her gender. Accordingly, the court concludes that plaintiff's request to conduct immunity-related discovery should be granted on the narrow issue of whether the reduction in force was, as she contends, a sham.  In the event plaintiff were to create an issue of fact in this regard, the court agrees with plaintiff that she will have satisfied her burden under the second prong of the qualified immunity analysis to demonstrate that Sargent's conduct was not objectively reasonable in light of the clearly established law. See <u>Piatt v. City of Austin</u>, 378 Fed. Appx. 466, 469 (5th Cir. May 18, 2010) ("Intent is relevant to the first prong [of qualified immunity analysis] but not to the second prong because officials generally are precluded from proving that intentionally discriminatory conduct is objectively reasonable" and "where the evidence is sufficient to support a claim of intentional gender or race discrimination, any immunity defense will be foreclosed").

Felder additionally purports to state a claim against defendants, including Sargent, for violation of her rights under

17

the FMLA.  In this regard, the complaint avers that JPS required Felder to apply for FMLA leave commencing April 13, 2011.  It further alleges that the district thereafter interfered with her rights by miscalculating her FMLA leave time, failing to give her notice that she was required to take FMLA leave concurrently with her receipt of workers' compensation benefits, rescinding its approval of her FMLA leave on October 11, 2011 and refusing to continue to honor the reasonable accommodation of allowing her to work from home.  Plaintiff seeks "immunity discovery to determine whether JPS ever designated Dr. Felder's leave prior to May 25, 2011 as paid or unpaid or as FMLA-qualifying and whether JPS gave Dr. Felder notice prior to May 25, 2011 that any leave time by her was FMLA qualifying."  Under the FMLA, a public employee who "acts, directly or indirectly, in the interest of an employer" satisfies the definition of employer under the FMLA and therefore may be subject to liability in his individual capacity, see Modica v. Taylor, 465 F.3d 174, 184 (5th Cir. 2006).  Here, the only allegation against Sargent as it pertains to this claim is that she denied plaintiff the reasonable accommodation of allowing her to work from home.  However, as the  FMLA does not require that employees be reinstated to work with "reasonable accomodations," Oatman v. Fuji Photo Film USA, Inc., 54 Fed. Appx. 413 (5th Cir. Nov. 12, 2002), the claim as pled in the complaint does not allege the violation of a clearly established right.  Accordingly,

defendant Sargent's qualified immunity remains intact as to this claim.[6]

Plaintiff's remaining state law claim for breach of contract is based on her allegation that Sargent used her apparent authority to cause plaintiff's contract to be breached and that JPS should have known that Sargent was breaching plaintiff's contract.  For their part, defendants characterize plaintiff's claim as being for wrongful termination and contend that the claim is barred by plaintiff's failure to comply with the notice provision of the Mississippi Tort Claim Act.  See Miss. Code Ann. § 11-46-11 (imposing a 90-day mandatory notice provision as prerequisite for filing suit); Lamb v. Booneville School Dist., 2009 WL 843116 (N.D. Miss., March 26, 2009)(dismissing plaintiff's wrongful termination claim against school district based on failure to comply with notice provision of the MTCA).  In the court's view, regardless of the application of the MTCA, plaintiff's putative claim against Sargent fails for a much more basic reason.  Namely, as Sargent was not a party to plaintiff's contract with JPS, she cannot be liable for its breach.  See Yarbrough v. Camphor, 645 So. 2d 867, 870 (1994) (while

---

[6] The court offers no opinion at this time on the question of whether JPS correctly calculated plaintiff's FMLA leave or improperly denied her FMLA leave.  Because the claim as pled against Sargent does not allege the violation of a clearly established right, plaintiff's request for immunity-related discovery on the FMLA claim is denied.

superintendent has authority and responsibility with respect to employment of personnel, "the ultimate power to terminate an employee lies with the school board."). See <u>Suddith v. Univ. of So. Miss</u>., 977 So. 2d 1158, 1175 (Miss. Ct. App. 2007) (setting forth elements of cause of action for breach of contract, including that plaintiff prove that defendant "breached the contract to which it was a party"). As plaintiff has failed to state a claim upon which relief can be granted, defendants' motion is well taken as to this claim.

Based on the foregoing, it is ordered that the motion should be granted in part and stayed in part to allow plaintiff to conduct immunity-related discovery to the extent discussed herein. The parties are given until January 17, 2014 in which to conduct the immunity related discovery permitted herein. Plaintiff's supplemental response to the dispositive motion is due on or before January 31, 2014 with defendants's supplemental rebuttal being due on or before February 7, 2014.

SO ORDERED this 5th day of December, 2013.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE