UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DR. PAMELA M. FELDER                                      PLAINTIFF

VS.                                    CIVIL NO. 3:13CV392TSL-JCG

DR. LONNIE EDWARDS, IN HIS INDIVIDUAL
CAPACITY; DR. JAYNE SARGENT, IN HER
INDIVIDUAL CAPACITY; AND AND JACKSON
PUBLIC SCHOOL DISTRICT                                   DEFENDANTS

MEMORANDUM OPINION AND ORDER

    This cause is before the court on the motion of defendants
Dr. Jayne Sargent, in her individual capacity, and Jackson Public
School District (JPS), for summary judgment pursuant to Rule 56 of
the Federal Rules of Civil Procedure.  Plaintiff Dr. Pamela M.
Felder has responded to the motion and the court, having
considered the memoranda of authorities, together with
attachments, submitted by the parties, concludes that the motion
should be granted in part and denied in part, as set forth herein.

    Plaintiff Felder was formerly employed by JPS as Deputy
Superintendent of Curriculum and Instruction/Accreditation.
On June 20, 2013, following her 2012 nonrenewal by JPS, she filed
this action against JPS and former JPS superintendents Dr. Lonnie
Edwards and Dr. Sargent, in their individual capacities only,
asserting claims for race and gender discrimination, disability
discrimination, violation of various constitutional rights and

violation of her rights under the Family Medical Leave Act.  By memorandum opinion and order entered December 5, 2013, the court granted a motion by Sargent to dismiss or for summary judgment on the basis of qualified immunity and state law immunity as to all but plaintiff's claim for gender discrimination relating to the termination of her employment.[1]  As to that claim, the court granted plaintiff's request to defer consideration of the motion to allow for immunity-related discovery.  Following a period for such discovery and additional briefing, the court denied Sargent's motion for summary judgment as to that claim.  The case is now before the court on a motion by Sargent for summary judgment as to plaintiff's gender discrimination claim and by JPS for summary judgment as to all plaintiff's claims.

Facts

The alleged facts on which plaintiff's claims are based were set forth in detail in the court's previous opinion entered December 5, 2013, and will not be repeated in the same detail here.  Basically, from the time she was hired in December 2009 until she was non-renewed in 2012, Felder was one of two deputy superintendents employed by the JPS.  She was Deputy Superintendent for Curriculum and Instruction/Accreditation and Wilbur Walters was Deputy Superintendent for Schools.

---

[1]    See Felder v. Edwards, Civ. Action No. 3:13CV392TSL-JMR, 2013 WL 6383126 (S.D. Miss. Dec. 5, 2013).

On March 29, 2011, while at work, Felder fell and injured her back, as a result of which she was required to be off work for a short time.  According to plaintiff, after a few weeks, and despite the disability caused by the injury, she was able to perform the essential functions of her job by working half days at the JPS Central Office and half days from home, an arrangement which was approved by the JPS Superintendent Lonnie Edwards. However, effective July 1, 2012, Edwards was replaced by defendant Sargent.[2]  Plaintiff alleges that Sargent, upon commencing service as Interim Superintendent, refused to continue to allow her to work half days from home as a reasonable accommodation for her disability, advising plaintiff by letter dated July 18, 2011 that she knew of no JPS policy that allowed an employee to complete her job duties from home and stating that plaintiff was to comply with JPS's sick leave policy requiring the use of sick leave for time away from work due to illness.  It appears that from that point forward, plaintiff continued to work half days at the central office but discontinued working half days from her home and instead took leave for the half days she was off.

---

[2]     Plaintiff alleges that after he was notified that his contract would not be renewed, Edwards asked her to testify at his due process hearing.  She claims that when she declined to do so, Edwards retaliated against her by requiring that she submit her time sheets directly to him instead of following the usual procedure of giving them to her secretary who then submitted them to the payroll office.  On these allegations, she asserts a violation of her First Amendment right to be left alone.

Plaintiff alleges that shortly after the 2011-2012 school year commenced, she was effectively demoted when Sargent began excluding her from meetings and transferred supervision over certain employees to Superintendent Walters with instructions that plaintiff no longer interact with the directors. In October 2011, in the wake of this demotion, plaintiff made a request for FMLA leave due to her continuing disability. This request was initially granted but then rescinded, ostensibly because she was not eligible for leave, as during the previous school year, she had exhausted all her FMLA leave.

Thereafter, on February 23, 2012, while she was still on leave to attend to her disability, plaintiff received notice from Sargent of her non-renewal for the succeeding school year. Sargent's non-renewal letter stated, "[T]he reasons for your nonrenewal as Deputy Superintendent are as follows:  The financial constraints of the school district necessitate the elimination of your positions [sic].  The school district is facing a severe budgetary challenge for this fiscal year and future fiscal years." Sargent further advised, "[T]he school district will no longer employ two deputy superintendents.  Consequently, the school administration will be restructured to provide concentrated focus on curriculum and the delivery of instruction such that two deputies will not be required."  Wilbur Walters was retained as Deputy Superintendent of Schools.

4

Plaintiff alleges that despite what Sargent stated in her letter as the reason for her non-renewal, JPS did not actually eliminate the position of "Deputy Superintendent of Instructional Support and School Accreditation," and in fact, maintained and filled the position with another individual for the 2012-2013 school year.[3]  She further charges, though, that even if the position was in fact eliminated, as claimed by JPS, the decision to retain Walters as a deputy superintendent rather than her was based on gender discrimination.  In addition, she contends she was subjected to gender discrimination when in June 2012, defendants hired Jason Sargent, rather than plaintiff, as Executive Director for Research and Accountability, when plaintiff was qualified for the position and had specifically requested to be placed in another position after being informed that her position was eliminated.

On the basis of the foregoing facts, plaintiff purports to assert claims against defendants for gender discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*,

---

[3]      Plaintiff has alleged that Sargent's purported elimination of positions (including hers) as a means of trimming the budget was in the nature of a reduction in force, and yet JPS did not follow prescribed procedures for a reduction in force. Beyond that, she contends that as part of this "reduction in force," JPS eliminated only three administrative positions (not including hers), and that it merely renamed the remaining administrative positions and imposed a reduction in pay, while retaining the incumbents in those other positions.

and the Equal Protection Clause of the Fourteenth Amendment and
for race discrimination under the Equal Protection Clause.  She
additionally asserts claims against JPS under 42 U.S.C. § 1983 for
violation of her alleged constitutional rights to be left alone
(First Amendment); to not be deprived of her property without due
process (Fifth Amendment Takings Clause); to privacy (Fourteenth
Amendment); and to procedural due process (Fourteenth Amendment).
She alleges claims under the Americans with Disabilities Act
(ADA), 42 U.S.S. § 12101 *et seq.*, and the Family Medical Leave Act
(FMLA), 29 U.S.C. § 2601 *et seq.*  Finally, plaintiff purports to
advance a state law claim against JPS for breach of contract.  The
court addresses each of these claims below.

 Gender Discrimination

 Plaintiff has asserted a claim for gender discrimination
against JPS and Sargent based on her allegation that she was
non-renewed as Deputy Superintendent while her less diligent male
counterpart, Wilbur Walters, kept his position as Deputy
Superintendent.[4]  In denying Sargent's original motion to dismiss

---

[4]     As the court noted in its December 2013 opinion,
plaintiff's claim for gender discrimination against JPS is brought
under Title VII and the Fourteenth Amendment Equal Protection
Clause.  Felder, 2013 WL 6383126, at *6.  Her gender
discrimination claim against Sargent is based on the Equal
Protection clause.  However, the elements of both claims are the
same.  Cf. Irby v. Sullivan, 737 F.2d 1418, 1431 (5th Cir. 1984)
("[W]hen section 1983 is used as a parallel remedy with Title VII
in a racial discrimination suit the elements of a cause of action
are the same under both statutes....") (quoting Lee v. Conecuh

or for summary judgment on this gender discrimination claim, the court found that plaintiff "had established a *prima facie* case of gender discrimination against Sargent with regard to her termination." <u>Felder</u>, 2013 WL 6383126, at *7.  The court went on to state, more accurately, that "the complaint adequately alleges that Sargent treated Wilbur Walters, a male, differently than plaintiff in nearly identical circumstances." <u>Id</u>.  The court further found that plaintiff's complaint set forth sufficient facts which, if proven, would create a question of fact as to whether plaintiff was actually terminated by Sargent on account of her gender.  <u>Id</u>.  Following a period of immunity-related discovery and supplemental submissions by the parties on this issue, the court found that in response to plaintiff's evidence in support of her *prima facie* case of gender discrimination, Sargent had "failed to present evidence of a legitimate nondiscriminatory reason for the decision to terminate plaintiff (whether by the putative elimination of her position or otherwise) and yet to retain plaintiff's male counterpart, Wilbur Walters." <u>Felder v. Edwards</u>, Civ. Action No. 3:13CV392TSL-JMR (S.D. Miss. May 12, 2014).  The court noted:

---

<u>Cty. Bd. of Ed.</u>, 634 F.2d 959, 962 (5th Cir. 1981).  No mention was made of a race discrimination claim in the earlier motion; however, plaintiff has arguably alleged in her amended complaint a claim of race discrimination against defendants under the Equal Protection Clause.

The parties' supplemental submissions relate primarily
to whether there was a reduction in force and if so,
whether Sargent complied with district policy regarding
the implementation of a reduction in force.  However, it
is apparent that summary judgment may not be granted,
irrespective of whether there was a reduction in force,
for while Sargent has offered evidence in rebuttal which
she submits demonstrates that Wilbur was more highly
qualified than plaintiff, she has offered no evidence
that this was the reason for her decision to retain
Walters.  See Turner v. Kansas City Southern Ry. Co.,
675 F.3d 887, 900 (5th Cir. 2012) (explaining that the
defendant's burden at the second step of the McDonnell
Douglas analysis is "to produce admissible evidence that
[the challenged employment decision was] based on
legitimate, nondiscriminatory reasons").  Neither has
she offered any evidence addressing plaintiff's
allegation and proof that she performed her job
competently while Walters consistently failed to perform
the duties of the position.

Id. at 2 n.1.  With their present motion, JPS and Sargent still have not presented evidence that Walters was retained rather than plaintiff because of his allegedly superior qualifications.  In their memorandum brief, they state, "It is Defendants' contention that Mr. Walters was retained because he was the more qualified of the two"; and they provide "comparative factual data concerning the Plaintiff and Mr. Walters" which they assert demonstrates that Walters was better qualified.  Yet they again offer no *evidence* that this is the reason for the challenged employment decision; nor do they dispute that such evidence is required.  Likewise, defendants still have not fully addressed plaintiff's allegation and proof that whereas she capably performed her job duties,

Walters failed to perform the duties of his position.[5]  Thus, for the very same reason the court previously found that summary judgment could not be granted on this claim, the court again finds that summary judgment cannot be granted on this claim.

Plaintiff further charges that JSU discriminated against her on account of her gender when it hired Jason Sargent instead of her as Executive Director of Research and Accountability.  JPS argues that plaintiff cannot prevail on this claim as she never applied for or expressed an interest in the position.  However, plaintiff argues in response, and has presented evidence tending to show that when she received notice that her position was to be eliminated, she asked Sargent whether she could be reassigned to another central office position; Sargent, she claims, did not respond.  See McLin v. Chiles, Civ. Action No. 3:14cv636-DPJ-FKB, 2015 WL 898280, at *4 (S.D. Miss. Mar. 3, 2015) ("Failure to apply

---

[5]     Plaintiff claims that her position was not, in fact, eliminated and points out that Dr. Lorene Essex was hired in June 2012 as Deputy Superintendent of Curriculum and Instruction – the position that had ostensibly been eliminated – for the 2012-2013 school year.  Defendants maintain, however, that plaintiff's position was eliminated but was subsequently reinstated under a "new administration," i.e., by Sargent's successor, Dr. Cedrick Gray.  At the same time, though, defendants argue that plaintiff cannot establish that she was discriminated against based on her gender since she was not replaced by someone outside her protected class.  In the court's view, given defendants' argument that plaintiff's position was eliminated (even if it was subsequently reinstated "under a new administration"), the fact that the "new administration" hired a woman to fill the newly-reinstated position would not foreclose plaintiff's claim that she was terminated by the "old administration" on account of her gender.

for a disputed promotion will bar a failure to promote claim
absent a showing that such an application would have been a futile
gesture.  But where a vacant position [is] not posted, some courts
have held that a formal application will not be required so long
as the plaintiff shows she expressed some interest in a promotion
or that the employer 'had some reason or duty to consider [her]
for the post.") (internal quotation marks and citations omitted).
Further, she notes that she was never given an opportunity to
apply for the position, as Sargent never posted the position.
Instead, Sargent testified she hired Jason Sargent for the
position (upon the recommendation of Wilbur Walters), even though
he also had not applied for the position and had never expressed
any interest in the position. Clearly, defendants have not shown
that summary judgment is proper as to this claim.[6]

In addition to these claims, plaintiff alleges that
defendants engaged in discrimination based on gender and/or race
in violation of the Equal Protection clause in the handling of the
termination of other central office administrators whose
employment contracts were non-renewed.  Specifically, she states

---

[6]    In its original opinion denying Sargent's motion to
dismiss or for summary judgment on the basis of qualified
immunity, the court noted that Sargent was not alleged to have
made the decision to hire Jason Sargent.  It appears from the
evidence now before the court, however, that Sargent did make the
decision to hire Jason Sargent, albeit on the recommendation of
Wilbur Walters.  She has not shown that she has qualified immunity
for this decision.

that in her February 28, 2012 letter to Randy Bernamonti, a white male, informing of his non-renewal for the 2012-2013 school year as Assistant Superintendent of Middle Schools, Sargent told him, "You may, however, be offered a position as assistant athletic director, or a similar position, contingent on your interest and board approval of the position and job description."  Further, in her letter of the same date to Tina Atkins, a white female, informing that she was being non-renewed as Executive Director of Exceptional Education, Sargent told Atkins, "Please know that you may re-apply for your position or any other position in the district for which you are qualified."

To establish an Equal Protection claim, the plaintiff must prove that she was treated less favorably because of her membership in a protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.  Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).  Defendants contend summary judgment is in order on plaintiff's claims relating to Bernamonti and Atkins on the basis that neither individual was similarly situated to her.  Bernamonti's position, they state, was a position with less rank and significantly less pay than plaintiff's; and Atkins' position was also a position with less rank.  In her response, plaintiff points out that irrespective of their specific positions, both Bernamonti and Atkins were central

11

office administrators whose positions were eliminated, as was
hers, and that in that respect, which is the only relevant
respect, both were similarly situated to her.  In the court's
opinion, there exists a genuine issue of material fact as to
whether these individuals were similarly situated to plaintiff in
all relevant or material respects and defendants' summary judgment
motion will be denied as to this claim.  See Racine Charter One,
Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 680 (7th Cir.
2005) ("To be considered similarly situated, comparators must be
prima facie identical in all relevant respects or directly
comparable to plaintiff in all material respects." (internal
quotation marks, brackets, and citations omitted) (quoted in
Lindquist v. City of Pasadena, Tex., 669 F.3d 225, 234 (5th Cir.
2012)).[7]

Disability Discrimination - ADA

The ADA prohibits an employer from discriminating against a
qualified individual on the basis of her disability.  42 U.S.C.
§ 12112(a).  A "'qualified individual' means an individual who,
with or without reasonable accommodation, can perform the
essential functions of the employment position that such
individual holds or desires."  Id. § 12111(8).  "Reasonable
accommodations" may include

---

[7]     The court notes that Sargent has not demonstrated that
she is entitled to qualified immunity on this claim.

job restructuring, part-time or modified work schedules,
reassignment to a vacant position, acquisition or
modification of equipment or devices, appropriate
adjustment or modifications of examinations, training
materials or policies, the provision of qualified
readers or interpreters, and other similar
accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). Discrimination under the ADA "includes
the failure to make reasonable accommodations to the known
physical or mental limitations of an otherwise qualified employee
with a disability, unless accommodation would impose an undue
hardship on the employer." Silva v. City of Hidalgo, Tex., 575
Fed. App'x 419, 423-24 (5th Cir. 2014) (citing 42 U.S.C. §
12112(b)(5)(A)).

In this case, plaintiff alleges that she is disabled and/or
perceived to be disabled; that she could have performed the
essential functions of her job as Deputy Superintendent with
reasonable accommodations; that she requested the reasonable
accommodation of being allowed to work half-days from home; and
that defendant denied this request and thereby violated the ADA.
In its motion, JPS argues that plaintiff cannot demonstrate that
she was "qualified for the job" because "it was an essential
function of Plaintiff's position as deputy superintendent of
instruction and curriculum to be present in the office during
normal business hours." See Hypes v. First Commerce Corp., 134
F.3d 721, 726 (5th Cir. 1998) ("[a]n employer is not required to
allow disabled workers to work at home, where their productivity

inevitably would be greatly reduced") (citing <u>Vande Zande v. State of Wis. Dept. Of Admin.</u>, 44 F.3d 538, 544 (7th Cir. 1995)). However, plaintiff maintains that she was able to perform the essential functions of her job while working from home and, moreover, has presented evidence that she was allowed to work from home by former JPS Superintendent Edwards.  In light of this evidence, and the absence of evidence from JPS showing that plaintiff's working from home would have imposed an undue hardship on the operation of the school district, <u>see</u> <u>Silva</u>, 575 Fed. App'x at 423-24, the court concludes that JPS has not demonstrated entitlement to summary judgment on this claim.

> <u>FMLA</u>

The FMLA entitles eligible employees to twelve workweeks of leave in any 12-month period because of, among other reasons, "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  <u>See also</u> <u>Ion v. Chevron USA, Inc.</u>, 731 F.3d 379, 389 (5th Cir. 2013).  An employee is "eligible" for FMLA leave if the employee has been employed "for at least 12 months by the employer ... and for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2)(A).  The FMLA protects against interference with an employee's right to FMLA leave.  <u>McArdle v. Dell Prods., L.P.</u>, 293 Fed. App'x 331, 334 (5th Cir. 2008).  "[T]o present an

interference claim under the FMLA, a plaintiff must show, *inter alia*, that the defendant denied or interfered with benefits to which she was entitled under the FMLA." <u>Brown v. Liberty Mut. Group, Inc.</u>, 2015 WL 1609141, at *3-4 (5th Cir. 2015).

> In her amended complaint, plaintiff alleges the following:
>
> Defendants interfered with Dr. Felder's FMLA rights by miscalculating Plaintiff's FMLA leave time, failing to give Dr. Felder notice that she was required to take FMLA leave concurrently with her receipt of workers compensation, rescinding its approval of Dr. Felder's request for FMLA leave on October 11, 2011, and failing to apply the method it selected to administer FMLA consistently.

More particularly, plaintiff alleges that JPS violated the FMLA when in October 2011, she made a request for FMLA leave that, while initially approved, was subsequently denied on the ostensible basis that she was not then eligible for FMLA leave as she had taken twelve weeks of FMLA leave within the previous twelve months.[8] Plaintiff denies that she used twelve weeks of FMLA leave during the previous twelve-month period and maintains that JPS miscalculated her FMLA leave time. In this regard, she notes that on May 25, 2011, i.e., during the previous school year,

---

[8] The letter to plaintiff rescinding the approval of her leave request was less than clear, stating exactly as follows:
It has come to my attention that you are not entitled to leave that was recently approved under the [FMLA] because you were on FMLA during the 2010-2011 school year. According to the FMLA Policy GADEA, which is attached, you are only entitled to FMLA during a 12 month period. It has been less than 12 months since your last leave under FMLA.

she did submit a request for FMLA leave covering the period from
April 13, 2011 through May 9, 2011; and she appears to take the
position that while JPS purported to grant her FMLA leave from
April 13 through July 14, 2011, she did not request the full
twelve weeks of leave and did not actually use the full twelve
weeks of leave.  Plaintiff further argues that none of the leave
she took in the prior school year could be counted against her
FMLA leave eligibility since JPS *retroactively* designated her
leave as FMLA leave.  See Ritchie v. Grand Casinos of Miss., Inc.,
49 F. Supp. 2d 878, 880 (S.D. Miss. 1999) (holding that "[o]nce an
employee provides the employer with notice of the need for leave,
it is the responsibility of the employer to designate leave, paid
or unpaid, as FMLA-qualifying, and to give the employee notice of
the designation.  An employer who fails to designate leave as
FMLA-qualifying 'may not designate FMLA leave retroactively' and
'none of the absence preceding the notice to the employee of the
designation may be counted against the employee's 12-week FMLA
leave entitlement.'") (quoting 29 C.F.R. § 825.208(c)).

    In support of its motion, JPS contends it was warranted in
"retroactively" approving plaintiff's May 25, 2011 request for
FMLA leave since plaintiff did not even submit that request for
FMLA leave until well after her period of leave had commenced.
See 29 C.F.R. § 825.301(d)("In all cases where leave would qualify
for FMLA protections, an employer and an employee can mutually

agree that leave be retroactively designated as FMLA leave."). However, in the court's opinion, JPS does not adequately address plaintiff's contention that she did not request or use twelve weeks of FMLA leave during the 2010-2011 school year.  JPS states that plaintiff "can provide no proof that she informed JPS that she was not requesting FMLA leave for the time period as stated and that she would not need a full 12 weeks of FMLA leave."  Yet she has presented such proof:  the FMLA leave request submitted by plaintiff, in which she sought FMLA leave only through May 9, 2011.  According to plaintiff's testimony, by the time JPS approved her request for leave, on June 8, 2011, she was already back at work.  In light of this evidence, it is apparent that JPS is not entitled to summary judgment on plaintiff's FMLA claim.

<u>First Amendment - Right to be Left Alone</u>

Plaintiff has asserted a claim for violation of her First Amendment right to be left alone based on her allegation that after she refused to testify on behalf of Dr. Lonnie Edwards in his JPS non-renewal hearing, he retaliated against her by requiring that she submit her time sheets directly to him. According to the plaintiff's allegations, prior to her refusal, she had followed JPS's established practice of submitting her time sheets to her secretary who then submitted her time sheets to payroll.  JPS contends that summary judgment is in order on this claim since the evidence, and specifically plaintiff's own

testimony, plainly establishes that Dr. Edwards did not require only plaintiff to submit her time sheets directly to him but he also required other JPS administrators to do the same. Indeed, plaintiff acknowledged in her deposition testimony that she was only one of numerous administrators on whom Dr. Edwards imposed this requirement. As plaintiff lacks evidence to substantiate her allegation that she was subject to retaliation in violation of the First Amendment, summary judgment will be granted as to this claim.[9]

### Fourteenth Amendment Due Process

Plaintiff alleges that she was demoted and that her due process rights were violated by defendants' failure to provide her with notice of her right to a hearing prior to her alleged demotion. As the court observed in its previous opinion, Mississippi law is unsettled on the issue of whether a demoted (as opposed to a terminated) school employee is entitled to notice and a hearing. See Winters v. Calhoun County School Dist., 990 So. 2d 238, 240-41 (Miss. Ct. App. 2008) (declining to address the issue of whether Education Employment Procedures Law applies to demotions as well as to non-renewals). However, JPS has submitted

---

[9]     Plaintiff did not respond to JPS's motion as it relates to this claim.

evidence, unrebutted by plaintiff, which establishes that plaintiff was not, in fact, demoted.[10]

### Fourteenth Amendment: Right to Privacy

Although JPS purports to seek summary judgment as to plaintiff's putative claim for violation of her Fourteenth Amendment right to privacy, the court has previously held that plaintiff failed to plead sufficient facts to state a cognizable claim for such a violation.  See Felder, 2013 WL 6383126, at *5.

### Fifth Amendment Takings Clause

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that "private property shall not be taken for public use without just compensation." Urban Developers LLC v. City of Jackson, Miss., 468 F.3d 281, 292 (5th Cir. 2006) (citing Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 17 S. Ct. 581, 584, 41 L. Ed. 979 (1897)).  Plaintiff alleges that during her disability, employees in school districts throughout the State of Mississippi donated 142 leave days to her under JPS's donation of leave policy, and she contends she had a property interest in this leave.  She alleges that JPS was obligated to pay her for this donated leave and yet failed to do so and thereby violated her Fifth Amendment rights by taking her property interest in this leave without just

---

[10]   In her response, plaintiff does not address JPS's arguments relating to her due process claim.

compensation.  In its motion, JPS contends that it is entitled to summary judgment on this claim because the Fifth Amendment's Takings Clause "applies to real property."  No authority is offered in support of this assertion, which as plaintiff notes in her response, appears unfounded.  Cf. Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003, 104 S. Ct. 2862, 81 L. Ed. 2d 815 (1984) ("That intangible property rights protected by state law are deserving of the protection of the Taking Clause has long been implicit in the thinking of this Court"); Washington Legal Foundation v. Texas Equal Access to Justice Found., 94 F.3d 996 (5th Cir. 1996) (treating money as subject to Taking Clause); see also Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003) (rejecting the argument that personal property is not subject to Fifth Amendment protection).

In its rebuttal, JPS argues that it is entitled to summary judgment on this claim because, in response to JPS's motion, plaintiff has failed to meet her obligation to "substantiate that she had any property interest in donated leave under the Fifth Amendment takings clause," has "provided no evidence that [she] had any contractual rights to donated leave," and has made "no argument that any property interest was taken from [her] *for public use* or that any alleged taking was *not for a public use*." However, plaintiff was not obligated to respond to arguments that JPS did not make or to anticipate arguments it might make.  And,

the court is not obligated to consider, and may instead disregard arguments and grounds for relief raised for the first time in the rebuttal.  See Gillaspy v. Dallas Indep. Sch. Dist., 278 F. App'x 307, 315 (5th Cir. 2008) (stating that "it is the practice of ... the district courts to refuse to consider arguments raised for the first time in reply briefs.") (citing Vaise Arms, Inc. v. Vais, 383 F.3d 287, 292 (5th Cir. 2004)).

Breach of Contract

In her amended complaint, plaintiff asserts a claim for breach of contract based on allegations that she was "entitled to renewal of [her employment] contract so long as she did not commit any serious misconduct," and that she was non-renewed despite not having committed any serious misconduct.  JPS has moved for summary judgment, arguing that plaintiff had no reasonable expectation of employment beyond the term of her existing employment contract, which ended June 29, 2012, and noting that it complied with the requirements of the Mississippi School Employment Procedures Act (SEPA), Miss. Code Ann. § 37-9-101 *et seq.* in non-renewing her contract.

It is apparent from her response to the motion that plaintiff's putative breach of contract claim is based on an alleged violation of provisions of the School Employment Procedures Act, which she contends entitled her to renewal of her contract.  The Act provides that "[i]f a recommendation is made by

21

the school district not to offer an employee a renewal contract for a successive year, written notice of the proposed nonreemployment stating the reasons for the proposed nonreemployment shall be given ... on or before April 15 ...." Miss. Code Ann. § 37-9-105.  Upon written request by the employee after receipt of such notice, the employee is entitled to a hearing at which to present matters relevant to the reasons given for the proposed nonreemployment, preceded by written notice of the specific reasons for nonreemployment.  Miss. Code Ann. § 37-9-109.[11]  Following such hearing, the school board, or hearing officer if the hearing is conducted by a hearing officer, must consider the evidence presented and decide whether the proposed nonreemployment "is a proper employment decision, is based upon a valid educational reason or noncompliance with school district personnel policies" and "notify the employee in writing of its final decision and reasons therefor."  Miss. Code Ann. § 37-9-111(5).  If the school board decides in favor of the employee, "the board shall have the authority to order the execution of a contract with the employee for an additional period of one (1) year."  Miss. Code Ann. § 37-9-111(7).  "Any employee aggrieved by a final decision of the school board is entitled to judicial review thereof."  Miss. Code Ann. § 37-9-113(1).

---

[11]    Plaintiff has not indicated that she requested such a hearing.

Plaintiff contends that while JPS purported to non-renew her contract on the basis that her position was eliminated, her position was not, in fact, eliminated and therefore, JPS had no valid educational reason to "terminate" her (a fact of which the school board was aware in June 2012, i.e., prior to the expiration of her contract). Plaintiff submits that in the absence of the school board establishing a valid educational reason to terminate her, she had an expectation that she would be awarded a contract for the 2012-2013 school year and that the board's failure to award her such contract constituted a breach of her employment contract.

Her position is unfounded. Plaintiff was not "terminated" during the term of her contract; rather, her contract expired and was not renewed for the succeeding school year. This was not a breach of her employment contract. Plaintiff may have had an expectation of continued employment during the term of her contract. See Bowman v. Ferrell, 627 So. 2d 335, 337-38 (Miss. 1993) (finding that school employee had "a contract-based expectation of continued employment for the duration of the contract, i.e., one school year"). However, she has suggested no basis on which she could be found to have had a reasonable expectation of employment beyond the expiration of her contract or entitlement to renewal of her contract. See Papagolos v. Lafayette County School Dist., 972 F. Supp. 2d 912, 929 (N.D.

23

Miss. 2013) (teacher's "expectation that she would continue to serve in her same position beyond the term of her contract was a unilateral expectation in continued employment that was not reflected in the agreement between Plaintiff and [school district]"). Accordingly, her claim for breach of contract will be dismissed.

<u>Conclusion</u>

Based on all of the foregoing, it is ordered that defendants' motion for summary judgment is granted as to plaintiff's claims for alleged violation of her rights to privacy and to be left alone under First Amendment; for violation of her due process rights under the Fourteenth Amendment; and for breach of contract. It is further ordered that defendants' motion for summary judgment is denied as to plaintiff's Title VII claim against JPS and her equal protection claim against JPS and Sargent relating to plaintiff's non-renewal and to the selection of Jason Sargent as Executive Director for Research and Accountability and as to the alleged dissimilar treatment of plaintiff and Tina Atkins and Randy Bernamonti.

SO ORDERED this 9th day of June, 2015.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE